## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| **CHIA-CHI HO,** | : | **Case No. 1:25-cv-00414** |
| | : | |
| **Plaintiff,** | : | **Judge Jeffery P. Hopkins** |
| | : | |
| **v.** | : | |
| | : | |
| **UNIVERSITY OF CINCINNATI, *et al*.,** | : | |
| | : | |
| **Defendants.** | : | |
| | : | |

### DEFENDANTS' MOTION TO DISMISS

Pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6), Defendants University of Cincinnati, Anastasios Angelopoulos, Matt Serra, and Kasey Underwood move this Court to dismiss Plaintiff Chia-Chi Ho's Complaint (the "Complaint") in its entirety as a matter of law. As explained in the attached Memorandum in Support, this Court lacks subject matter jurisdiction over all claims against the Individual Defendants and lacks subject matter jurisdiction over certain claims against the University (Counts I, IV, V, VI and VII of the Complaint). Further, all counts of the Complaint fail to state a claim upon which relief can be granted.

Respectfully submitted,

DAVE YOST (0056290)
Attorney General of Ohio

*/s/ Scott H. DeHart*
Scott H. DeHart (0095463)
Kenneth J. Hurley (0103724)
shd@zrlaw.com | kjh@zrlaw.com
Zashin & Rich Co., L.P.A.
17 South High Street, Suite 900
Columbus, Ohio 43215
Phone: (614) 224-4411 / Facsimile: (614) 224-4433

*Special Counsel for all Defendants*

## MEMORANDUM IN SUPPORT

Plaintiff Chia-Chi Ho ("Plaintiff") worked for Defendant University of Cincinnati ("University") until her termination in 2025. Now, Plaintiff sues the University, her Department Chair Anastasios Angelopoulos ("Angelopoulos"), Vice Provost for Academic Personnel Matt Serra ("Serra"), and Associate Director of Faculty Affairs and Academic Personnel Kasey Underwood ("Underwood") (Underwood, along with Serra and Angelopoulos are collectively referred to as the "Individual Defendants") for purported violations of Title II of the Americans with Disabilities Act ("ADA"), Section 504 of the Rehabilitation Act, and Title IX of the Education Amendments of 1972, and for purported violations brought pursuant to 42 U.S.C. § 1983 ("Section 1983") for the alleged deprivation of Plaintiff's constitutional rights. However, all of the claims Plaintiff asserts in the Complaint fail as a matter of law and must be dismissed.

As an initial matter, Plaintiff waived all claims against the Individual Defendants when she filed a lawsuit in Ohio's Court of Claims, and the Eleventh Amendment bars Plaintiff's ADA and Section 1983 claims against the University and Individual Defendants too. In addition, all counts of the Complaint must be dismissed because they each fail to state any claim upon which relief can be granted. For these reasons and others stated more fully below, the Court should dismiss the Complaint in its entirety.

## I. FACTS AS ALLEGED BY PLAINTIFF.

Plaintiff is a former professor in the University's Chemical and Environmental Engineering Department. (Complaint, Doc. 6, PageID #41, ¶ 4).[1] Plaintiff alleges she filed internal Title IX complaints with the University in 2021. (Doc. 6, PageID #46, ¶ 54). Plaintiff alleges she filed

---

[1] For purposes of this motion to dismiss, the facts alleged in the Complaint are taken here as true.

these complaints with the encouragement of Associate Director of Faculty Affairs and Academic Personnel Kasey Underwood and the University's Title IX Coordinator. (*Id.*, PageID #43, ¶ 18).

In May 2023, Plaintiff submitted an accommodation request relating to her visual impairments. (Doc. 6, PageID #42, ¶ 13). Plaintiff's request was granted. (*Id.*, PageID #42, ¶ 14). Plaintiff submitted a subsequent accommodation request in April 2024. (*Id.*, PageID #43, ¶ 15). Plaintiff's request was granted. (*Id.*)

On May 6, 2024, the University sent notice to Plaintiff commencing disciplinary proceedings for insubordination. (Doc. 6, PageID #44, ¶ 32; Initial Article 9 Notice attached hereto as Ex. A).[2] On May 15, 2024, the University amended the notice to include an additional allegation regarding Plaintiff misrepresenting the purpose of her sabbatical. (Doc. 6, PageID #45, ¶ 34; Amended Article 9 Notice attached hereto as Ex. B). On June 12, 2024, Plaintiff received a copy of the preliminary findings from the University's investigation into the misconduct allegations. (Proposal of Discipline Letter attached hereto as Ex. C). On July 8, 2024, Plaintiff, accompanied by her union representative, had an opportunity to respond to the allegations. (Proposal of Discipline Letter, Ex. C). After having an opportunity to review the preliminary findings and Plaintiff's response, on August 2, 2024, the University proposed Plaintiff's termination. (Doc. 6, PageID # 45, ¶ 37; Proposal of Discipline Letter, Ex. C). Plaintiff exercised her rights under the faculty collective bargaining agreement and grieved the proposed discipline. A grievance panel upheld the discipline, and the University terminated Plaintiff's employment on February 21, 2025. (Doc. 6, PageID ##41-42, ¶ 4; Termination Notice attached hereto as Ex. D).

---

[2]       In the Complaint, Plaintiff references several notices she received prior to her termination. Those notices are an integral part of Plaintiff's Complaint and may be considered by the Court. *See Composite Techs., L.L.C. v. Inoplast Composites SA DE CV*, 925 F. Supp. 2d 868, 873 (S.D. Ohio 2013), *quoting Mediacom Se. LLC v. BellSouth Telecomms., Inc.,* 672 F.3d 396, 400 (6th Cir.2012) (citations, internal quotation marks, and alterations omitted) ("[D]ocuments integral to the complaint may be relied upon, even if they are not attached or incorporated by reference, it must also be clear that there exist no material disputed issues of fact regarding the relevance of the document.").

On May 5, 2025, Plaintiff filed a complaint against the University in the Ohio Court of Claims. *Ho v. Univ. of Cincinnati*, Ohio Ct. of Claims No. 2025-00453JD (May 5, 2025). On June 20, 2025, Plaintiff filed a complaint initiating her lawsuit in this Court.[3] (Doc. 1-1, PageID ##4-13). Both the Court of Claims complaint and the Complaint filed with this Court are based on the same facts and events. Plaintiff also alleges she filed many complaints with the U.S. Department of Education, Office for Civil Rights. (Doc. 6, PageID #43, ¶ 21). Plaintiff does not divulge what she alleged in the purported complaints, or if the University or Individual Defendants received notice of, or were otherwise aware of, such complaints.

## II.     LAW AND ARGUMENT.

The Court should dismiss the Complaint in its entirety because (1) this Court lacks subject matter jurisdiction over all claims against the Individual Defendants; (2) lacks subject matter jurisdiction over certain claims against the University (i.e. Counts I, IV, V, VI and VII); and (3) all Counts in the Complaint fail to state a claim upon which relief can be granted.

### A. Legal Standard of Review.

Rule 12(b)(1) empowers a court to dismiss a complaint for "lack of subject matter jurisdiction." Fed. R. Civ. P. 12(b)(1). "When a defendant moves to dismiss on grounds of lack of subject matter jurisdiction, 'the plaintiff has the burden of proving jurisdiction in order to survive the motion.'" *Nichols v. Muskingum College*, 318 F.3d 674, 677 (6th Cir. 2003) (quoting *Moir v. Greater Cleveland Reg'l Transit Auth.,* 895 F.2d 266, 269 (6th Cir. 1990)).

---

[3]     On June 20, 2025, Plaintiff filed her original complaint along with a Motion for Leave to Proceed In Forma Pauperis. (Doc. 1). On June 30, 2025, the Magistrate Judge issued a Report and Recommendation denying the Motion for Leave to Proceed In Forma Pauperis. (Doc. 3). On July 18, 2025, Plaintiff paid the filing fee and, consistent with the Magistrate Judge's July 22, 2025, Order, the Clerk of Court filed Plaintiff's Complaint on July 22, 2025. (Docs. 4, 5, 6). Thus, the operative complaint before this Court is the Complaint noted on the Court's Docket as Doc. 6, PageID ##41-50.

A complaint that fails to state a claim upon which relief can be granted is subject to dismissal under Fed. R. Civ. P. 12(b)(6). To survive a Rule 12(b)(6) motion, the complaint must include sufficient facts to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations and citations omitted). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In deciding whether the complaint is plausible, the Court must interpret it in a light most favorable to the non-moving party, accept factual allegations as true, and give the plaintiff the benefit of reasonable inferences. *Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 434 (6th Cir. 2008) (citations omitted). However, the Court is not required to accept as true legal conclusions bereft of supporting factual allegations. *Iqbal*, 556 U.S. at 678.

A properly stated claim must also satisfy the pleading requirements in Fed. R. Civ. P. 8(a). This pleading standard "does not require detailed factual allegations . . . [but a] pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action is insufficient." *Iqbal*, 556 U.S. at 678 (internal quotations and citations omitted). Also insufficient is a complaint which "tenders 'naked assertions' devoid of 'further factual enhancement.'" *Id.* (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 557 (2007)).

### B. This Court Lacks Subject Matter Jurisdiction Over All of Plaintiff's Claims Against the Individual Defendants.

On June 20, 2025, Plaintiff initiated this lawsuit in this Court. Prior to doing so, on May 5, 2025, Plaintiff filed a complaint in the Ohio Court of Claims regarding the same incidents and allegations from which this lawsuit arises. *Ho v. Univ. of Cincinnati*, Ohio Ct. of Claims No. 2025-00453JD (May 5, 2025).

4

By filing a complaint in the Ohio Court of Claims, Plaintiff has, as a matter of well-established law, waived all of her claims against the Individual Defendants in this lawsuit. Pursuant to Ohio Rev. Code 2743.02(A)(1), "filing a civil action in the court of claims results in a *complete* waiver of *any* cause of action, based on the same act or omission, that the filing party has against any officer or employee." (emphasis added).  Section 2743.02's waiver of suits "'against any state officer or employee,' provides a quid pro quo for plaintiffs []: 'The state consents to be sued in exchange for a plaintiff's waiver of claims against the state's employees.'" *Portis v. Ohio*, 141 F.3d 632, 634 (6th Cir. 1998) (quoting *Thomson v. Harmony*, 65 F.3d 1314, 1318 (6th Cir. 1995)).

The Sixth Circuit has held, *en banc*, and reiterated more than once, that a claim against individual employees cannot be brought in federal court if it is also brought in the Ohio Court of Claims.  *Leaman v. Ohio Dep't of Mental Retardation*, 825 F.2d 946 (6th Cir.1987) (en banc) ("Where a claimant elects to sue the state in the Court of Claims, in other words, the state's employees are given an affirmative defense which the federal court has both the jurisdiction and the duty to recognize."); *Thomson*, 65 F.3d 1314; *Portis*, 141 F.3d 632, 633-34 (applying *Leaman*). This preclusive effect applies to any claims "based on the same act or omission" as those raised in the Court of Claims action.  *Thompson*, 65 F.3d at 1319 n.4 (6th Cir. 1995).

The Ohio legislature intended for this waiver to extend to all claims, including federal claims.  *Leaman*, 825 F.2d at 952 (Leaman alleged that she had been discharged in violation of 42 U.S.C. 1983; 29 U.S.C. 794 (the Rehabilitation Act of 1973); and the First and Fourteenth Amendments); *see also Turker v. ODRC*, 157 F.3d 453 (6th Cir. 1998) (Turker alleged violations of her civil rights pursuant to 42 U.S.C. § 1983, her constitutional rights under the First and

Fourteenth Amendments, and state law torts of malicious prosecution, abuse of process, wrongful discharge, and intentional infliction of emotional distress).

Consequently, this Court lacks subject matter jurisdiction over all of Plaintiff's claims against the Individual Defendants and those claims must be dismissed.

### C. Plaintiff's Section 1983 Claims Against All Defendants Must Be Dismissed Because the Court Lacks Subject Matter Jurisdiction.

Plaintiff asserts that the University and Individual Defendants violated her Fourteenth Amendment rights to procedural due process and equal protection, retaliated against her in violation of the First Amendment, and conspired to violate her civil rights. She asserts each of those four claims pursuant to Section 1983. (Doc. 6, PageID ##47-49, Counts IV, V, VI and VII). As a remedy for those alleged violations, Plaintiff seeks monetary relief. (*Id.*, PageID ##49-50, Prayer for Relief).

Plaintiff's Section 1983 claims for monetary damages against the University and against the Individual Defendants in their official capacities are barred by the Eleventh Amendment to the United States Constitution. The Eleventh Amendment expressly provides that federal courts have no jurisdiction over "any suit in law or equity" filed "against one of the United States." U.S. Const. amend. XI.

It is well established that a public university like the University of Cincinnati is an arm of the state and is entitled to Eleventh Amendment immunity from suit for compensatory and punitive damages. *See, e.g.*, *Johnson v. Univ. of Cincinnati*, 215 F.3d 561, 571 (6th Cir. 2000). Likewise, the claims against the Individual Defendants in their official capacities seeking monetary damages must be dismissed. *Will v. Michigan Department of State Police*, 491 U.S. 58, 71 (1989), ("a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. As such, it is no different from a suit against the State itself.").

6

Moreover, as detailed below, Plaintiff fails to state Section 1983 claims against the University and the Individual Defendants in their official capacities, and, to the extent she attempts to sue the Individual Defendants in their individual capacities based on Section 1983 they are each entitled to qualified immunity.

> **i.      Plaintiff's procedural due process claim.**

To establish a claim for deprivation of procedural due process under the Fourteenth Amendment, Plaintiff must show three essential elements: (1) she has a life, liberty, or property interest protected by the Due Process Clause; (2) she was deprived of this protected interest; and (3) the state did not afford her adequate procedural rights prior to the deprivation.  *Med. Corp., Inc. v. City of Lima*, 296 F.3d 404, 409 (6th Cir. 2002) (citing *Hahn v. Star Bank*, 190 F.3d 708, 716 (6th Cir. 1999)).  In the employment setting, due process protections are not far-reaching: a tenured public employee is only entitled to "oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story." *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 546 (1985).

Here, Plaintiff admits the University sent her notices on May 6, 2025, and again on May 15, 2024, regarding the commencement of disciplinary proceedings and the basis for those proceedings.  (Doc. 6, PageID #45, ¶¶ 32-34; Initial Article 9 Notice attached as Ex. A; Amended Article 9 Notice, Ex. B).  Plaintiff further admits she knew the University's reasons for her termination.  (Doc. 6, PageID #43, ¶¶ 4, 37; Proposal of Discipline Letter, Ex. C; Termination Notice, Ex. D).  And Plaintiff admits that the grievance panel heard her version of events.  (Doc. 6, PageID #45, ¶¶ 4, 37; Proposal of Discipline Letter, Ex. C; Termination Notice, Ex. D). Consequently, Plaintiff admits she received all the process to which she was entitled, and her claim fails accordingly.

7

Plaintiff's due process claim suffers from an additional defect: Plaintiff engages in impermissible "group pleading," where the Individual Defendants' acts are lumped together with no effort to delineate the conduct of each defendant which purportedly deprived Plaintiff of due process. *See Lanman v. Hinson*, 529 F.3d 673, 684 (6th Cir. 2008) (abrogated on other grounds); *Robertson v. Univ. of Akron Sch. of Law*, 2021 U.S. Dist. LEXIS 157345, *15, 2021 WL 3709915 (N.D. Ohio 2021). Indeed, Plaintiff's only allegation against Underwood is that Underwood encouraged her to file a Title IX complaint. (Doc. 6, PageID #43, ¶¶ 18-19). Plaintiff's only allegations regarding Angelopoulos are that she filed a Title IX complaint against him and that the University's Title IX Office facilitated a teaching accommodation for Plaintiff with Angelopoulos. (Doc. 6, PageID #44, ¶¶ 17, 26, 54). And Plaintiff's only allegation concerning Serra is that he knew that Plaintiff attended law school. (Doc. 6, PageID #44, ¶ 30). None of these allegations speak to the alleged deprivation of due process Plaintiff ascribes to the Individual Defendants.

### ii. Plaintiff's Equal Protection Clause claim.

To establish an Equal Protection Clause claim, "a plaintiff must allege that the state made a distinction which 'burden[ed] a fundamental right, target[ed] a suspect class, or intentionally treat[ed] one differently from others similarly situated without any rational basis for the difference.'" *Jefferies v. City of Cincinnati,* 2024 U.S. Dist. LEXIS 40169, *4, 2024 WL 986495 (S.D. Ohio Mar. 7, 2024) (quoting *Doe v. Miami University*, 882 F.3d 579, 595 (6th Cir. 2018)). Courts analyze these claims under the same lens as Title VII claims in the employment context. *Sutherland v. Mich. Dep't of Treasury*, 344 F.3d 603, 614 (6th Cir. 2003).

Here, Plaintiff appears to allege that the University treated her differently than her ex-husband, ostensibly based on sex. (Doc. 6, PageID #48, ¶¶ 65-69). Importantly, however, Plaintiff fails to identify *how* her ex-husband was similarly situated. For instance, she does not claim her ex-husband struggled to communicate effectively like she did, nor does she claim her ex-husband

was accused of falsifying his application for a sabbatical, which Plaintiff admits formed the basis for her eventual termination. (Doc. 6, PageID #43, ¶¶ 4, 37; Proposal of Discipline Letter; Termination Notice, Ex. D). Plaintiff merely claims that both she and her ex-husband taught remotely and that only she was terminated, but expressly denies that this issue led to her termination. (Doc. 6, PageID #45, ¶¶ 34, 66). As such, Plaintiff fails to plausibly allege that she was treated differently than other similarly-situated male professors and she therefore fails to state a proper Equal Protection Clause claim. Consequently, Plaintiff's claim that her equal protection rights were violated should be dismissed.

Moreover, as discussed above, Plaintiff fails to delineate her allegations against the Individual Defendants as they relate to her Equal Protection Clause claim. This impermissible group pleading also warrants dismissal of this claim. *Warman v. Mt. St. Joseph Univ.*, 144 F.4th 880, 898 (6th Cir. 2025) (dismissing plaintiff's equal protection claims where plaintiff's claim "largely consist[ed] of nonspecific allegations that various defendants […] violated his constitutional rights by attributing wrongful acts to the whole group,").

### iii. Plaintiff's First Amendment retaliation claim.

To establish a viable First Amendment retaliation claim, Plaintiff must plausibly allege that (1) she engaged in constitutionally protected speech, (2) the University's adverse action caused an injury that would chill a person of ordinary firmness from continuing the activity, and (3) that action was motivated at least in part by Plaintiff's exercise of her constitutional rights. *Dye v. Office of the Racing Comm'n*, 702 F.3d 286, 294 (6th Cir. 2012). In the public employment context, courts consider two additional "sub-elements" under the first prong: first, whether the public employee spoke in their capacity as an employee or as a private citizen, and second, whether the statement related to a matter of public concern. *Id*. Finally, courts analyze whether the

employer's interest in promoting efficient performance of public services through its employees outweighs the interest in protecting speech on matters of public concern. *Id.*

Here, Plaintiff alleges that the University retaliated against her for submitting an internal Title IX complaint in 2021 as well as undescribed "complaints" to the U.S. Department of Education's Office for Civil Rights ("OCR"). As an initial matter, however, Plaintiff fails to allege any facts tying her OCR filings to her termination. Indeed, Plaintiff's *only* allegation concerning her OCR complaints is that she filed them. (Doc. 6, PageID #43, ¶ 21). Beyond that allegation, Plaintiff merely references her OCR complaints as protected activity, and then claims the University fired her for that activity. (Doc. 6, PageID #46, ¶ 54; PageID #48, ¶¶ 72-73). Such conclusory allegations are insufficient as a matter of law to survive a motion to dismiss. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). As Plaintiff fails to plead *any* facts suggesting a causal connection between her OCR filings and her termination, Plaintiff's purported protected activity under the First Amendment is limited to her alleged Title IX complaint.

Reliance on her internal Title IX complaints, however, does not save Plaintiff's claim from dismissal. Plaintiff's First Amendment claim fails because the Complaint is devoid of any allegations demonstrating a causal connection between her Title IX complaints and her termination. Though Plaintiff cites the "timing" of her discipline as establishing some connection between her Title IX complaints and her termination (Doc. 6, PageID #44, ¶ 33), the timing demonstrates the opposite. Plaintiff alleges she filed her Title IX complaints in 2021 (Doc. 6, PageID 46, ¶ 54), yet the University did not initiate the disciplinary proceedings which led to her termination until *August of 2024*. (Doc. 6, PageID 45, ¶ 37, Ex. C). This *four year* lapse in time fails to demonstrate a causal connection between the two events, as it is well-established that "multiyear gaps between the protected conduct and the first retaliatory act [are] insufficient to

establish the requisite causal connection." *Fuhr v. Hazel Park Sch. Dist.*, 710 F.3d 668, 676 (6th Cir. 2013) (citing *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273-74 (2001), and *Dixon v. Gonzales*, 481 F.3d 324, 334 (6th Cir. 2007)). Like the plaintiff in *Fuhr*, "[t]his multi-year gap proves fatal to [plaintiff's] assertion that there is a causal connection." *Id.* Because Plaintiff fails to plausibly plead a causal connection between her Title IX complaints and her termination, her First Amendment retaliation claim should be dismissed.

Furthermore, as discussed above, Plaintiff fails to identify any actions taken by any of the Individual Defendants that can even remotely be considered First Amendment retaliation and her claim fails as a result. *See Boxill v. O'Grady*, 935 F.3d 510, 518 (6th Cir. 2019) (dismissing plaintiff's First Amendment retaliation claim where plaintiff's allegations did not state any facts specific to the defendants).

### iv. Plaintiff's Conspiracy claim.

Plaintiff's final claim for relief asserts that the Individual Defendants "conspired to violate [Plaintiff's] constitutional and statutory rights." (Doc. 6, PageID #49, ¶ 79). For this claim, the Individual Defendants are entitled to judgment as a matter of law under the intra-corporate conspiracy doctrine. *Jackson v. City of Cleveland*, 925 F.3d 793, 820 (6th Cir. 2019) ("as a matter of law, [defendant] cannot be liable for conspiracy in violation of § 1983 where he is alleged to have conspired with other employees of the same government entity, in the scope of their employment, to violate Plaintiffs' rights.").

### v. Qualified Immunity.

The Individual Defendants are also entitled to qualified immunity on Plaintiff's Section 1983 claims against them in their individual capacities. "Qualified immunity is an affirmative defense that shields government officials performing discretionary functions from liability for civil

11

damages insofar as their conduct does 'not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Barrett v. Steubenville City Sch*., 388 F.3d 967, 970 (6th Cir. 2004) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Accordingly, a government official will be shielded from liability, unless the plaintiff shows: (1) a constitutional violation by defendant; and (2) that the right at issue was "so clearly established that a reasonable official in that position would have clearly understood that he or she was under an affirmative duty to refrain from such conduct." *Id*. (citing *Rich v. City of Mayfield Heights*, 955 F.2d 1092, 1095 (6th Cir. 1992)). If the right is not clearly established, courts may choose not to reach the constitutional question. *See Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011).[4]

To survive a motion to dismiss on qualified-immunity grounds, the plaintiff must allege facts that "plausibly mak[e] out a claim that the defendant's conduct violated a constitutional right that was clearly established law at the time, such that a reasonable officer would have known that his conduct violated that right." *Johnson v. Moseley*, 790 F.3d 649, 653 (6th Cir. 2015). The plaintiff also must allege with particularity "facts that demonstrate what *each* defendant did to violate the asserted constitutional right." *Heyne v. Metro. Nashville Sch. Dist.*, 655 F.3d 556, 564 (6th Cir. 2011) (internal citations and quotation marks omitted) (emphasis original). Plaintiff must also show that the constitutional rights were "clearly established," meaning that "existing precedent" placed the relevant "statutory or constitutional question beyond debate." *White v. Pauly*, 580 U.S. 73, 79 (2017). Ultimately, the plaintiff bears the burden of showing that an officer is not entitled to the defense of qualified immunity. *Johnson*, 790 F.3d at 653.

---

[4] The Supreme Court has "repeatedly stressed the importance of resolving immunity questions at the earliest possible stage in litigation." *Hunter v. Bryant*, 502 U.S. 224, 227 (1991). Indeed, "the driving force behind creation of the qualified immunity doctrine was a desire to ensure that insubstantial claims against government officials will be resolved prior to discovery." *Pearson v. Callahan*, 555 U.S. 223, 231-32 (2009) (cleaned up). Thus, when a defendant moves to dismiss on qualified-immunity grounds, district courts cannot "avoid ruling on the issue." *Summers v. Leis*, 368 F.3d 881, 886 (6th Cir. 2004).

As described above, Plaintiff fails to allege with particularity "facts that demonstrate what *each* defendant did to violate the asserted constitutional right." *Heyne*, *supra.* And she fails to show that her constitutional rights were clearly established. Consequently, the Individual Defendants are entitled to qualified immunity and the claims against them should be dismissed on this basis as well.

### D. This Court Lacks Subject Matter Jurisdiction over Plaintiff's ADA Title II claim, and, Even if the Court Has Jurisdiction, Plaintiff Fails to State an ADA Title II or Rehabilitation Act Claim.

Plaintiff brings statutory discrimination claims under Title II of the Americans with Disabilities Act and Section 504 of the Rehabilitation Act. Those statutes prohibit public or federally funded entities from discriminating against disabled individuals while operating public services or programs. *See S.S. v. E. Ky. Univ.*, 532 F.3d 445, 452 (6th Cir. 2008) (citing 42 U.S.C. § 12132 and 29 U.S.C. § 794).

However, Plaintiff's allegations relate more to Title I of the ADA rather than Title II. That is, Plaintiff alleges she was unlawfully terminated on the basis of her disability, and that her employer, the University, allegedly failed to accommodate her disability. (Doc. 6, PageID ##42-43, ¶¶ 13–16). Title I of the ADA prohibits discriminating against *employees* on the basis of their disability, not Title II. 42 U.S.C. § 12112(a) ("Title I").

#### i. Sovereign Immunity.

Claims for money damages due to violations of Title I—employment discrimination—are barred by sovereign immunity. *Garrett*, 531 U.S. at 360. Claims for money damages arising from violations of Title II—access to public services—are not barred by sovereign immunity so long as they are based on conduct that violates the Fourteenth Amendment. *United States v. Georgia*, 546 U.S. 151, 159 (2006) ("[I]nsofar as Title II creates a private cause of action for damages against the States for conduct that actually violates the Fourteenth Amendment, Title II validly abrogates

state sovereign immunity."). But, again, the Defendants' conduct that allegedly violated Title II arises out of Plaintiff's employment with the University. Consequently, the Supreme Court's holding in *Garrett*, rejecting Congress' attempted abrogation of immunity for state employees' Title I employment discrimination claims, also applies to Title II employment discrimination claims. *Ward v. Tennessee Dep't of Educ.*, No. 3:19-CV-00218, 2020 WL 1814194, at *1 - 4 (M.D. Tenn. Apr. 9, 2020).

### ii. Failure to State an ADA or Rehabilitation Act claim.

Even assuming this Court has subject matter jurisdiction over Plaintiff's ADA Title II claim, she fails to state a claim under Title II of the ADA or Section 504 of the Rehabilitation Act. Given the statutes' similar requirements, courts generally evaluate ADA and Rehabilitation Act claims together. *See S.S. v. E. Ky. Univ.*, 532 F.3d 445, 452 (6th Cir. 2008) (citing 42 U.S.C. § 12132 and 29 U.S.C. § 794).

As an initial matter, any ADA or Rehabilitation Act claims against the Individual Defendants in their individual capacities must be dismissed. This is so because neither the ADA nor the Rehabilitation Act provide a private right of action against a public employee acting in his or her individual capacity. *Key v. Grayson*, 163 F. Supp. 697, 715 (E.D. Mich. 2001).

For what remains—the claim against the University and the Individual Defendants in their official capacities—to prevail under either statute, Plaintiff must establish that (1) she has a qualifying disability, (2) she is otherwise qualified for a program, and (3) she was excluded from participation in, denied the benefits of, or subjected to discrimination under a program because of his disability. *S.S. v. E. Ky. Univ.*, 532 F.3d 445, 453 (6th Cir. 2008). Additionally, claims under the Rehabilitation Act, unlike ADA claims, impose an extra causation requirement. That is, the plaintiff must also demonstrate that the alleged discrimination was "solely" because of her disability. *See Lewis v. Humboldt Acquisition Corp.*, 681 F.3d 312, 317 (6th Cir. 2012) (en banc);

*Anderson v. City of Blue Ash*, 798 F.3d 338, 357 n.1 (6th Cir. 2015). Even assuming for purposes of this Motion that Plaintiff has a disability as she alleges, she has not alleged facts to demonstrate the remaining elements needed for both the ADA and Rehabilitation Act claims. Consequently, those claims fail as well.

Starting with the final element, causation "solely" because of disability, which applies only to Plaintiff's Rehabilitation Act claim, the Complaint alleges discrimination based on sex too, not just disability. (Doc. 6, Count III; *also Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 173 (2005) (retaliation is a form of discrimination)). For that reason alone, her Rehabilitation Act claim must be dismissed. *Saqr v. Univ. of Cincinnati*, No. 1:18-cv-542, 2019 WL 699347, at *12 (S.D. Ohio Feb. 20, 2019) ("Because Plaintiffs clearly allege more than one cause of discrimination in a manner that is incompatible with relief under the Rehabilitation Act, they fail to state claims under that Act."); *Yates-Mattingly v. University of Cincinnati*, No. 1:11-cv-753, 2012 WL 3779934, at *3–4 (S.D. Ohio Aug. 31, 2012) (Rehabilitation Act claim dismissed when plaintiff "expressly alleged that she was terminated because of her age and race, in addition to her disability[ ]") (emphasis added).

Regarding the third element about exclusion, as alleged, Plaintiff's purported mistreatment occurred in the context of her employment with the University and is not alleged to relate to exclusion from a public program. *See Longino v. City of Cincinnati*, No. 1:12-cv-424, 2013 U.S. Dist. LEXIS 50253, 2013 WL 1412192 (S.D. Ohio Apr. 8, 2013) (dismissing Plaintiff's Title II ADA claim, in part, because "the amended complaint relates solely to the City's alleged mistreatment of plaintiff in the employment context.").

As to the second element, Plaintiff's allegations do not show that she was otherwise qualified to continue her employment at the University with or without a reasonable

accommodation. "A 'qualified individual with a disability' is defined as 'an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires.'" *Black v. Roadway Express Inc.*, 297 F.3d 445, 448 (6th Cir. 2002) (quoting 42 U.S.C. § 12111(8)); *see* 29 C.F.R. § 1630.2(m) ("Qualified individual with a disability means an individual with a disability who satisfies the requisite skill, experience, education and other job-related requirements of the employment position such individual holds or desires, and who, with or without reasonable accommodation, can perform the essential functions of such position.").

Moreover, Plaintiff's allegations fail to establish that the University reasonably could have accommodated her disability but refused to do so. *E. Ky. Univ.*, 532 F.3d at 453. In fact, her allegations expressly state the University *granted* her requests for accommodation. (Doc. 6, PageID ##42-43, ¶¶ 14-15). She did not allege any request for accommodation was denied, or that any alleged failure to accommodate somehow impeded her ability to participate in or benefit from a program or service. *Knox County*, 532 F.3d at 453.

### iii.    Failure to exhaust administrative remedies.

Plaintiff has not attached a notice of right to sue from the EEOC, as required by 42 U.S.C. § 12117(a) and 42 U.S.C. § 2000e-5(e)(1). Failure to exhaust her administrative remedies serves as an additional basis for dismissing her ADA claim. *Marcum v. Oscar Mayer Foods Corp.*, 46 F. App'x 331, 333 (6th Cir. 2002) ("The exhaustion of administrative remedies is a condition precedent to an ADA action."); *Mitchell v. Chapman*, 343 F.3d 811, 821 n.10 (6th Cir. 2003) (When a plaintiff "files suit prior to receiving a right to sue letter, the district court is compelled to dismiss the premature action for failure to exhaust administrative remedies.").

### E.  Plaintiff Fails to State a Title IX Retaliation Claim.

Plaintiff's Title IX retaliation claim against the Individual Defendants must be dismissed

because Title IX authorizes suits only against the funding recipient – the University – and not individual employees. *Soper v. Hoben*, 195 F.3d 845, 854 (6th Cir. 1999); *Patterson v. Hudson Area Schools*, 551 F.3d 438, 445 n.6 (6th Cir. 2009).

For the Title IX retaliation claim against the University, the Sixth Circuit has "analogized to Title VII retaliation claims, stating that a Title IX plaintiff must show "that (1) [s]he engaged in protected activity, (2) [the funding recipient] knew of the protected activity, (3) [s]he suffered an adverse school-related action, and (4) a causal connection exists between the protected activity and the adverse action." *Bose v. Bea*, 947 F.3d 983, 988 (6th Cir. 2020), cert. denied, 141 S. Ct. 1051 (quoting *Gordon v. Traverse City Area Pub. Schs.*, 686 F. App'x 315, 320 (6th Cir. 2017)).

In *Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 174 (2005) (emphasis added), the Supreme Court held that a retaliation claim is only viable "where *the funding recipient* [itself] retaliates against an individual because he has complained about sex discrimination." Thus, *Jackson* establishes that a Title IX retaliation claim lies only for a funding recipient's own retaliation but does not establish a cause of action against an entity for retaliation by its employees. *See Jackson*, 544 U.S. at 184. The Sixth Circuit has held the same. *See, M.D. v. Bowling Green Indep. Sch. Dist.*, 709 F. App'x 775, 779 (6th Cir. 2017) (a plaintiff raising Title IX retaliation claim cannot use agency principles to impute liability to funding recipient for the misconduct of its employees).

Additionally, to state a proper Title IX retaliation claim, a complaint must allege that the retaliatory conduct was "materially adverse" such that it "dissuade[s] a reasonable [person] from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. v. White*, 548 U.S. 53, 68 (2006). In assessing whether conduct constitutes a materially adverse action, "[c]ontext matters," and "the significance of any given act of retaliation will often depend upon

17

the particular circumstances." *Id.* at 69.

Further, a complaint for retaliation must plausibly allege a causal connection between engaging in protected activity and the materially adverse action taken against the plaintiff. To adequately plead causation, a complaint "must put forth some fact creating an inference that the adverse action would not have occurred without the [student] first engaging in protected activity." *Sizemore v. Edgewood Bd. of Educ.*, No. 1:19-CV-555, 2020 WL 1904726, at *8 (S.D. Ohio Apr. 17, 2020) (Title VII); *see also Mitchell v. Ohio State Univ.*, No. 2:19-CV-4162, 2020 WL 5250459, at *5 (S.D. Ohio Sept. 3, 2020) (Title IX). Based on the above law, Plaintiff's Complaint fails to state a Title IX retaliation claim, as detailed below.

### i.    Plaintiff fails to allege that the University retaliated against her.

Plaintiff alleges retaliatory conduct by the Individual Defendants, i.e., University employees. (Doc. 6, PageID ## 44-45, ¶¶ 22-26, 32-39). However, *Jackson* establishes that a Title IX retaliation claim lies only for a funding recipient's own retaliation but does not establish a cause of action against an entity for retaliation by its employees. *See Jackson*, 544 U.S. at 184. Plaintiff's retaliation claim should be dismissed for this reason.

Further, Plaintiff's Title IX retaliation claim against the University based on a theory that the University was deliberately indifferent to its employees' retaliatory conduct is not viable. *See Bose*, 947 F.3d at 989 (questioning whether "deliberate indifference to retaliation [is] even actionable under Title IX"); *M.D.*, 709 F. App'x at 779 ("M.D. has failed to cite any authority applying the ... deliberate indifference framework to a Title IX retaliation claim"). Even if a Title IX retaliation claim based on deliberate indifference were actionable, however, such a claim would fail here because Plaintiff does not allege she ever notified an appropriate University official that she was subjected to retaliation. In other words, the University could not have been deliberately

18

indifferent to retaliation it did not know about as a matter of law. *Bose*, 947 F.3d at 993; *M.D.*, 709 F. App'x at 779. Plaintiff's Title IX retaliation claim should be dismissed for this additional reason.

### ii. Plaintiff fails to allege any causal connection.

Plaintiff's retaliation claim also should be dismissed because she fails to plead any causal connection between any claimed adverse action and her protected activity. Plaintiff alleges her protected activity (i.e. internal Title IX complaints) occurred in 2021, and then again when filing complaints with the U.S. Department of Education.[5] (Doc. 6, PageID ##43, 46, ¶¶21, 54). On May 6, 2024, the University initiated disciplinary proceedings against her. (*Id.*, PageID #44, ¶32).

As set forth above, Plaintiff alleges no facts connecting her OCR filings to an adverse action. Plaintiff does not even allege that the University, the Individual Defendants, or those who made the decision to terminate her employment, had any knowledge of the OCR complaints. Moreover, Plaintiff alleges no facts connecting her OCR filing to her Title IX complaint. She does not provide any details regarding what she complained about to OCR.

Assuming Plaintiff attempts to allege causation through temporal proximity between the filing of her Title IX complaint in 2021, and the University initiating disciplinary proceedings in 2024, the three-year gap between her purported protected activity and her disciplinary proceedings

---

[5]       Plaintiff lists five additional complaints she filed with the U.S. Department of Education after the University initiated disciplinary proceedings. (Doc. 6, ¶21). The Supreme Court has expressed a concern that employees who see the proverbial writing on the wall that they are about to be fired should not be able to use the filing of such complaints as protection to insulate themselves from adverse employment actions that were previously contemplated. *See Univ. of Texas Southwestern Med. Ctr. v. Nassar,* 570 U.C. 338, 358 (2013)("[A]n employee who knows that he or she is about to be fired for poor performance, .... [t]o forestall that lawful action, ... might be tempted to make an unfounded charge of racial, sexual, or religious discrimination; then, when the unrelated employment action comes, the employee could allege that it is retaliation."); *see also Clark Cnty. Sch. Dist. v. Breeden,* 532 U.S. 268, 272, (2001) (per curiam) ("Employers need not suspend previously planned transfers upon discovering that a Title VII suit has been filed, and their proceeding along lines previously contemplated, though not yet definitively determined, is no evidence whatever of causality."). The Sixth Circuit also acknowledged that employees who are about to be fired should not abuse the civil-rights protections by filing frivolous harassment complaints. *Montell v. Diversified Clinical Servs., Inc.*, 757 F.3d 497, 507 (6th Cir. 2014).

are insufficient to establish a causal connection as a matter of law. *See Montell v. Diversified Clinical Servs.*, 757 F.3d 497, 505-06 (6th Cir. 2014) (citing *Mickey v. Zeidler Tool & Die Co.*, 516 F.3d 516, 525 (6th Cir. 2008) (temporal proximity must be "very close"); *Wasek v. Arrow Energy Servs.*, 682 F.3d 463, 472 (6th Cir. 2012). Moreover, Plaintiff's misconduct violations were obvious "intervening legitimate reasons" for the University to discipline her that "dispel[led] an inference of retaliation based on temporal proximity." *Id*. Plaintiff's Title IX retaliation claim should be dismissed for these additional reasons.

## III. CONCLUSION.

For the reasons set forth above, Defendants state that their Motion to Dismiss is well taken and respectfully request that the Court dismiss all counts of the Complaint.

Respectfully submitted,

DAVE YOST (0056290)
Attorney General of Ohio

*/s/ Scott H. DeHart*
Scott H. DeHart (0095463)
Kenneth J. Hurley (0103724)
shd@zrlaw.com | kjh@zrlaw.com
Zashin & Rich Co., L.P.A.
17 South High Street, Suite 900
Columbus, Ohio 43215
Phone: (614) 224-4411
Facsimile: (614) 224-4433

*Special Counsel for all Defendants*

## <u>CERTIFICATE OF SERVICE</u>

I certify that a copy of the foregoing was filed electronically on October 29, 2025.  Notice was sent by operation of the Court's electronic filing system to all other parties with access to this Court's ECF system, and the parties may access this filing through the Court's ECF system. Further, a copy of the foregoing was served upon Plaintiff *pro se* by e-mail to chiachiho1@gmail.com and by ordinary U.S. Mail, postage prepaid, this same day, at the following address:

> Chia-Chi Ho
> 8059 Meadowcreek Drive
> Cincinnati, Ohio 45244

*/s/ Scott H. DeHart*
Scott H. DeHart (0095463)

*One of the Attorneys for Defendants*