

College of Engineering and Applied Science
Office of the Dean
University of Cincinnati
PO Box 210018
Cincinnati, OH 45221-0018

Mantei Center 816
(513) 556-2933

August 2, 2024

Chia-Chi Ho
College of Engineering and Applied Science

**RE: Proposal of Discipline**

Dear Professor Ho,

On May 6, 2024, I notified you of an investigation under Article 9 of the Collective Bargaining Agreement (CBA). This investigation was initiated upon receiving sufficient information that you were not meeting the standards of professional performance required by the CBA between the University and the AAUP. The question of professional performance pertained to allegations of insubordination, including but not limited to failure to abide by the assigned delivery method of your assigned courses, ignoring your Academic Unit Head's instructions to teach your courses in-person instead of remotely, and attempting to change the delivery method of your assigned courses without approval.

On May 15, 2024, I issued an Amended Article 9 Notice after additional allegations surfaced that you are not meeting the standards of professional performance required by the CBA. The additional questions of professional performance pertained to (1) allegations of poor teaching performance, including but not limited to, ineffective lectures, disorganization, and failure to provide a complete syllabus, and (2) questions regarding your ability to fulfill the objectives of your Spring 2024 semester academic leave.

On June 12, 2024, Kasey Underwood, from the Office of Faculty Affairs and Academic Personnel, sent you the preliminary findings from the investigation.[1] On July 8, 2024, we met so you could review and respond to the findings pursuant to Article 9.1.6.2. Additional attendees of this meeting were Kasey Underwood and Jeff Cramerding (your AAUP representative). I have reviewed and considered the information you shared at the meeting, along with the documentation you submitted on July 9, 2024, and now write to propose discipline under Article 9.1.7 of the CBA.

**Summary of the Article 9.1.6.2 Meeting:**

At the meeting you disclosed that you have a medical condition and that you have been working with the Office of Human Resources and the Office of Accessibility Resources to receive

---

[1] The June 12, 2024, document and findings are incorporated herein by reference.

An affirmative action/equal opportunity institution

**EXHIBIT C**

accommodations. You claimed that the University has not "met all requirements that your doctor recommended" but when asked, you confirmed that the University has not denied any of the accommodations that you have requested.

Allegations of poor teaching performance

You first addressed the allegations of poor teaching performance. You stated that you do not bring notes to class due to your medical condition and students might perceive that you are "just teaching out of [your] head." You stated that you know the course material very well and that you have taught the same classes for several years.

You denied the students' allegations of poor teaching performance and stated their complaints came in during the beginning of the semester and could not be valid due to the short amount of time they had been in your class. You denied the allegation that you used Chat GPT during your Fluid Mechanics course to ask what you should teach your students. You confirmed that you have used Chat GPT during your classes in prior semesters but that you have not used it during your courses this summer. You denied that you solve problems incorrectly during class and that you ask students to answer questions at the board because you do not know how to answer the question. You denied that you only covered one chapter in the first five weeks of class. You stated you asked a colleague from another department to observe one of your classes and he gave you a favorable review of your teaching.

Allegations of Insubordination related to your Summer 2024 Courses

You claimed that you did not know your teaching schedule for Summer 2024 until the last minute. You acknowledged that you received Dr. Angelopoulos' email from August 2023 informing you of the classes that you would teach during the next academic year but denied that the email was an official course assignment.

You confirmed that you received Dr. Angelopoulos' email on April 12, 2024, which gave you the classroom assignment for each of your courses. You confirmed that you emailed Dr. Angelopoulos on April 20, 2024, informing him that you planned to teach remotely. You confirmed that he responded to your email and informed you that you must teach in-person.

You then stated that you did not have access to the courses in Canvas until after May 5, 2024, and were unsure whether Dr. Angelopoulos had assigned you the courses. You then claimed that you had an accommodation to teach remotely based on an email from July 2022 and you were "just trying to follow" that email for your summer courses.

You then denied that you actually intended to teach your summer courses using either a fully remote or hybrid method. You stated that you were only going to teach remotely for the first week of class. You confirmed that you sent an email to your Thermodynamics TA on May 5, 2024, and asked him, "Do you know how to set up recurring Zoom for class using Canvas?" You also confirmed that you asked the TA to attend class to set up the Zoom calls. You again denied that you intended to teach either fully remote or hybrid and claimed you only asked your TA whether he knew how to set up recurring Zoom classes because you were merely curious whether it was something he knew how to do.

Academic Leave Allegations

You confirmed that you were on Academic Leave during the 2024 Spring semester. You confirmed that you have been a full-time law student at the University of San Francisco since Fall 2023. You stated that going to law school was the purpose of your Academic Leave. You admitted that you did not inform your department head nor anyone in my office that you were a full-time law student. You stated that President Pinto wrote you a letter of recommendation when you were applying to law school.

We discussed the products/accomplishment that you committed to achieving in your application for academic leave submitted on October 24, 2022. We first discussed whether you developed a new course during the leave. You stated you did not develop any new courses. You stated that you intend to develop a new course and that you spoke with your new department head prior to the Article 9 meeting about developing a course. You also stated that you worked with Beth Faller from CET&L during your academic leave.

You were then asked whether you learned new technology for teaching, another accomplishment that you committed to achieving in your application for academic leave. As fulfillment of this, you stated that you paid attention to the technology that the University of San Francisco used during your law school classes and used that information to determine what technology you will utilize for your future classes at UC. When asked for an example, you stated that some of your professors at the University of San Francisco record their lectures and posts them on Canvas. You stated this is something you intend to start doing for your own classes. You could not give any additional examples of how you accomplished your stated objective.

You stated that you decided to get into the field of law because you wanted to contribute to UC's patent law efforts. You stated you used time during your academic leave to meet with Geoffrey Pinski in the University of Cincinnati's Tech Transfer Office to discuss how you can contribute to the University. You stated that you offered to volunteer your time with that office.

You admitted that you are taking the patent bar exam in July 2024. You admitted that in June 2024, you requested that UC provide you with a digital copy or a scanned version of the book "Patent Bar Exam Practice Questions, Vol. III" as an accommodation for your medical condition. You then denied that you were going to law school or taking the patent bar exam for personal reasons. You stated your sole intent for doing these things is to further the mission of the University.

**Conclusion:**

After taking into consideration the Article 9 Preliminary Findings, and your verbal and written responses, I conclude that you have committed serious professional misconduct and serious dishonesty related to your professional duties in violation of Article 9.2 of the CBA.

Allegations of Insubordination related to your Summer 2024 Courses

You ignored Dr. Angelopoulos' directive to teach in-person and attempted to change the delivery method of your courses without approval. Many students complained after you attempted to do so. I acknowledge that you left the University of San Francisco and came back to Cincinnati to

teach in-person after you received my Article 9 notice - which directed you to teach in-person - but your initial acts of dishonesty and insubordination are unacceptable. You have been previously disciplined for your insubordination to Dr. Angelopoulos and it is inexcusable that you continue to disregard his directives.

Your claim that you did not intend to teach either remotely or using a hybrid method is not credible. Your claim that you were merely curious about your TA's abilities when you asked him if he knew how to set up recurring Zoom calls is not credible. Your claim that you were unsure of your assigned courses as of May 5, 2024, is not credible. Your claim that you believed there was an ongoing agreement for you to teach remotely or hybrid based on a July 2022 email to Dr. Angelopoulos is not credible. You provided the specific email which clearly states your request to teach using a hybrid method only during the 2023 Spring semester. No reasonable person would interpret this request for Spring 2023 amounted to an ongoing agreement that you were teaching your courses remotely or using a hybrid method.

Allegations of poor teaching performance

Since 2021, you have been put on notice of concerns related to your teaching performance and unprofessional conduct towards students. Despite receiving a formal written warning about your poor performance, the department continues to receive the same complaints about your teaching and treatment of students. Attempts you have made to improve your performance related to these issues, if any, have not been successful.

You denied the students' allegations about ineffective lectures, disorganization, refusal to answer student questions, unclear expectations, and failure to provide a detailed syllabus. I find the students to be credible. These are not isolated complaints and instead represent the continuation of a pattern of the same complaints the department has received for the past three years.

There is no evidence to suggest that you have met expectations for teaching as a tenured faculty member in the College of Engineering and Applied Science, nor have you undertaken sufficient efforts to improve your performance in aspects that have been repeatedly raised in your APRs, by students in their evaluations, and your prior discipline. You have an obligation to your students to provide excellence in teaching and you are not meeting that obligation.

Academic Leave Allegations

You did not meet any of your stated objectives during your academic leave and you fraudulently misled the University into paying your full salary while you attended law school for your own personal benefit. Your actions violated University policies regarding dishonesty and fraud. If you had been honest about your intention to use your academic leave to attend law school, your academic leave would not have been approved.

After the Article 9 meeting, I followed up on your claims about the work you performed during your academic leave. First, you stated that you worked with Beth Faller, Director of CET&L. In an email to the Provost's office, Ms. Faller denied that she worked with you at all during the Spring 2024 semester. Ms. Faller stated CET&L's only contact with you occurred towards the end of June 2024 when you requested a consultation. Ms. Faller stated she scheduled a meeting

with you on June 24, 2024, at 9:00AM but you did not show up for that meeting. As of July 8, 2024, she had not had any further contact with you.

I spoke with Geoffrey Pinski from UC's Tech Transfer Office. Mr. Pinski stated you requested a meeting with him in February 2024. He scheduled a meeting with you on February 19, 2024, but you did not show up for that meeting. At your request, he scheduled another meeting with you on March 13, 2024, but you did not show up to that meeting either. You finally showed up to the scheduled meeting on March 18, 2024. He stated that you informed him you were interested in a future in patent law and that you offered to help in his office. He told you that you could speak with Maddie Bourbon, a licensing specialist in his office, to discuss the possibility of an internship in the future. He stated that you did not follow-up with Ms. Bourbon after meeting with him.

Your conduct is in violation of multiple University policies, was dishonest, unprofessional and not in conformity with the behavior expected of employees at the University of Cincinnati. As such, I find and conclude that your actions and behaviors are serious professional misconduct and serve as adequate cause for dismissal under Article 9.2(a), (c), (d), (e) and (f).

**Proposed Discipline**

Pursuant to Article 9, no bargaining unit member may be disciplined or terminated without adequate cause. Based on the totality of the circumstances, the evidence outlined above, the findings, and my conclusions, I have determined that your actions and behaviors are adequate cause to terminate your employment with the University of Cincinnati. In addition, we will be seeking reimbursement of the salary and benefits provided to you during the academic leave semester as it was applied for and approved under false pretenses.

Pursuant to Article 9.3 of the Agreement, you have seven (7) days from receipt of this letter in which to challenge this proposed discipline by filing a request for mediation. Your AAUP representative can assist you if you choose to challenge this proposed discipline.

Due to the findings and conclusions set forth in this proposal of discipline, please be aware that effective the day after grades are due for this summer semester, you are being placed on administrative leave with pay and benefits pending the outcome of the Article 9 and grievance procedures, pursuant to Article 9.1.8.

Sincerely,

*[signature]*

Frank M. Gerner
Senior Associate Dean
College of Engineering and Applied Science


Cc:   Personnel File
      Kasey Underwood, Faculty Affairs and Academic Personnel
      Jeff Cramerding, AAUP